**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JERAMIE L. HARRIS,

              Petitioner,

v.

UNITED STATES OF AMERICA,

              Respondent.

Civil Action No. 20-14749 (MAS)

**OPINION**

**SHIPP, District Judge**

    This matter comes before the Court on Petitioner's amended motion to vacate sentence (ECF No. 4) and motions seeking discovery (ECF No. 12) and objecting to Judge Wolfson's order granting permission to interview counsel for the Government (ECF No. 13). The Government filed responses to the motions and the amended motion to vacate sentence (ECF Nos. 14-15), to which Petitioner replied (ECF No. 16). For the following reasons, the Court denies Petitioner's amended motion to vacate sentence, denies Petitioner a certificate of appealability, and denies Petitioner's outstanding motions.

**I.    BACKGROUND**

    Following an investigation, Petitioner was arrested by Drug Enforcement Agency agents outside of his home for which they had a search warrant. (PSR ¶¶ 25-28.) A search of Petitioner's car turned up drug packaging paraphernalia and a kilogram press. (*Id.* at ¶¶ 28-29.) Following the search of the car, Petitioner admitted to agents that he lived at the residence to be searched, and that a firearm and cocaine were inside the house. (*Id.* at ¶ 29.) Upon searching the home, agents

found more drug packaging paraphernalia, heroine, and cocaine in the kitchen, as well as a metal spoon, drug packaging materials, and a .22 caliber revolver in a bag in the bedroom. (*Id.* at ¶¶ 30-32; ECF No. 15-1 at 2-3.) During an interview with agents following his arrest, Petitioner stated that he "was happy that [he was caught] when he [was], [be]cause normally he would have had a lot more" drugs in his home. (ECF No. 15-1 at 3.) Petitioner also candidly admitted that, although prison time would likely "save his life," he would continue "selling drugs" after he got out of prison. (*Id.* at 3.)

Following his arrest, Petitioner was charged with the knowing and intentional distribution and possession with intent to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1), and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i). (*See* Docket No. 19-470 at ECF No. 13.) Petitioner was appointed counsel, who informed Petitioner that he believed a conviction would be very likely, and suggested that they seek a plea agreement. (*See* ECF No. 15-2 at 3-5.) Following negotiations with the Government, counsel secured Petitioner a favorable plea deal in which Petitioner would plead guilty to all three charges in exchange for a stipulated sentencing range of 84 to 188 months, which was significantly less than the potential career offender sentence to which Petitioner would otherwise have been subject. (*See* ECF No. 15-3.)

On July 8, 2019, Petitioner appeared before the Honorable Freda L. Wolfson, U.S.D.J., to enter his guilty plea. (ECF No. 15-4.) During the plea colloquy, Petitioner confirmed that he had read and understood the information and discussed it with counsel to his satisfaction, including the charge that he had possessed a weapon in furtherance of a drug trafficking crime. (*Id.* at 8-9.) Petitioner also confirmed that he understood the plea agreement, which contained the stipulation that Petitioner possessed the firearm "in relation to" the drug trafficking crime with which he was

2

charged. (ECF No. 15-3 at 10; ECF No. 15-4 at 13-15.) Petitioner confirmed that he had discussed the agreement with counsel to his satisfaction, and had no further questions regarding it, and also confirmed that he understood the crimes with which he was charged, and the penalties he faced as a result. (ECF No. 15-4 at 15-22.) Petitioner also confirmed that he understood the elements of the crimes with which he was charged, including that his § 924(c) charge required that he knowingly possess a firearm "during and in relation" to a drug trafficking crime. (*Id.* at 32.) Petitioner thereafter gave a factual basis for his plea, admitting that he knowingly and intentionally possessed cocaine and packaging materials with the intent to distribute controlled substances, that he possessed a firearm, and that he possessed that firearm during and in relation to his possession with the intent to distribute cocaine. (*Id.* at 33-34.) The Government thereafter proffered the evidence it would have used had the matter gone to trial. (*Id.* at 37.) The Government highlighted the evidence connecting the firearm to drug trafficking. (*Id.*) This evidence included that the gun was found in Petitioner's residence, which was used as a stash house, and was found in a bag containing "a metal spoon and baggies that are commonly used for packaging and distributing narcotics." (*Id.*) Additionally, the gun was found in close proximity to what Petitioner admitted was a drug cutting agent. (*Id.* at 37-38.) Following all of these admissions and recitations, Petitioner pled guilty to all three charges. (*Id.* at 39.)

Petitioner made no efforts to withdraw his guilty plea prior to sentencing.[1] (Docket No. 19-470 Docket Sheet.) On November 14, 2019, Judge Wolfson sentenced Petitioner to 84 months on counts one and two to run concurrently, and a mandatory 60-month sentence on the § 924(c) charge to be served concurrently, for a total sentence of 144 months' imprisonment, well within

---

[1] Based on assertions in Petitioner's reply, it appears that Petitioner learning his § 924(c) conviction renders him ineligible to earn additional good time credits under the First Step Act may have motivated his change of heart and current motion. (*See* ECF No. 15 at 13.)

3

the stipulated range. (Docket No. 19-470 at ECF No. 26.) Petitioner thereafter filed a motion to vacate sentence (ECF No. 1), and subsequently filed an amended petition (ECF No. 4).

In his motion and briefing, Petitioner contends that his plea counsel proved ineffective in telling him that his conviction under § 924(c) at trial was almost certain, which Petitioner now believes was incorrect as Petitioner "never used a weapon to protect drugs or drug proceeds." (ECF No. 4 at 17-20.) Petitioner is not very clear as to what advice was actually given by counsel as to the elements or nature of a § 924(c) charge. Petitioner appears to assert that he did not understand that possessing a weapon in furtherance of a drug crime required more than the gun merely be on the premises where drugs are located. (*Id.*)

Plea counsel provided a certification in response to Petitioner's motion to vacate sentence. (ECF No. 15-2.) In his certification, counsel disputes Petitioner's assertions. According to plea counsel, shortly after being appointed, he was provided with discovery. This discovery included photographs of the seized items (drugs, packaging and weighing paraphernalia, and the firearm), and the Government's contention that Petitioner's home had been a stash house for a drug trafficking organization. (*Id.* at 3.) Counsel states that he discussed this with Petitioner, who readily admitted the allegations. (*Id.* at 4.) Counsel states that he did discuss the elements of each crime with Petitioner, who did not dispute that he possessed the firearm in furtherance of drug trafficking, and that he told Petitioner that he was likely to get a significantly more severe sentence at trial as he was likely a career offender and could receive a sentence up to life imprisonment. (*Id.* at 4.) According to counsel, he concluded that Petitioner's conviction under § 924(c) was likely at trial because the weapon was found in proximity to drug paraphernalia in what was apparently a drug stash house, and a jury would likely infer that the weapon was meant to protect the drug operation. (*Id.* at 4-5.) Counsel further states that he would not have recommended a plea on less than all of the charges, as it was unlikely that a plea agreement could be reached on

4

just the first two charges while permitting a trial on the § 924(c) charge, and an open plea would likely subject Petitioner to a sentence "at or near [the] 20-year maximum prison term" on the first two offenses, with the possibility of life imprisonment on the § 924(c) charge. (*Id.* at 5.) Finally, counsel states that he discussed the plea agreement with Petitioner and advised Petitioner to accept the plea agreement. According to counsel, the plea agreement was Petitioner's best option because it provided a sentence of between seven and sixteen years, rather than the likelihood of a sentence in excess of twenty years and possibly life imprisonment if Petitioner were convicted at trial, which counsel told Petitioner was likely. (*Id.* at 6-7.)

## II.   LEGAL STANDARD

A prisoner in federal custody may file a motion pursuant to 28 U.S.C. § 2255 challenging the validity of his or her sentence. Section 2255 provides, in relevant part, as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255. Unless the moving party claims a jurisdictional defect or a constitutional violation, to be entitled to relief the moving party must show that an error of law or fact constitutes "a fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Horsley*, 599 F.2d 1265, 1268 (3d Cir. 1979) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)), *cert. denied*, 444 U.S. 865 (1979); *see also Morelli v. United States*, 285 F. Supp. 2d 454, 458-59 (D.N.J. 2003).

## III. DISCUSSION

### A. No hearing is needed to resolve Petitioner's claim

A district court need not hold an evidentiary hearing on a motion to vacate where "the motion and files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *United States v. Booth*, 432 F.3d 542, 545-56 (3d Cir. 2005); *United States v. Day*, 969 F.2d 39, 41-42 (3d Cir. 1992). "Where the record, supplemented by the trial judge's personal knowledge, conclusively negates the factual predicates asserted by the petitioner or indicate[s] that petitioner is not entitled to relief as a matter of law, no hearing is required." *Judge v. United States*, 119 F. Supp. 3d 270, 280 (D.N.J. 2015) (citing *Gov't of V.I. v. Nicholas*, 759 F.2d 1073, 1075 (3d Cir. 1985)); *see also United States v. Tuyen Quang Pham*, 587 F. App'x 6, 8 (3d Cir. 2014); *Booth*, 432 F.3d at 546. As Petitioner's ineffective assistance claim is without merit for the reasons expressed below, no hearing is needed in this matter.

### B. Petitioner's ineffective assistance claim

In his motion to vacate sentence, Petitioner raises a claim of ineffective assistance of plea counsel in which he asserts that counsel gave him inadequate advice which led him to plead guilty to a violation of § 924(c). The standard applicable to ineffective assistance claims is well established:

> [c]laims of ineffective assistance are governed by the two-prong test set forth in the Supreme Court's opinion in *Strickland v. Washington*, 466 U.S. 668 (1984). To make out such a claim under *Strickland*, a petitioner must first show that "counsel's performance was deficient. This requires [the petitioner to show] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687; *see also United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007). To succeed on an ineffective assistance claim, a petitioner must also show that counsel's allegedly deficient performance prejudiced his defense such that the petitioner was "deprive[d] of a fair trial . . . whose result is reliable." *Strickland*, 466 U.S. at 687; *Shedrick*, 493 F.3d at 299.

6

> In evaluating whether counsel was deficient, the "proper standard for attorney performance is that of 'reasonably effective assistance.'" *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005). A petitioner asserting ineffective assistance must therefore show that counsel's representation "fell below an objective standard of reasonableness" under the circumstances. *Id.* The reasonableness of counsel's representation must be determined based on the particular facts of a petitioner's case, viewed as of the time of the challenged conduct of counsel. *Id.* In scrutinizing counsel's performance, courts "must be highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689; *Shedrick*, 493 F.3d at 299.
>
> Even where a petitioner is able to show that counsel's representation was deficient, he must still affirmatively demonstrate that counsel's deficient performance prejudiced the petitioner's defense. *Id.* at 692-93. "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. The petitioner must demonstrate that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see also Shedrick*, 493 F.3d at 299. Where a "petition contains no factual matter regarding *Strickland's* prejudice prong, and [only provides] . . . unadorned legal conclusion[s] . . . without supporting factual allegations," that petition is insufficient to warrant an evidentiary hearing, and the petitioner has not shown his entitlement to habeas relief. *See Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010). "Because failure to satisfy either prong defeats an ineffective assistance claim, and because it is preferable to avoid passing judgment on counsel's performance when possible, [*Strickland*, 466 U.S. at 697-98]," courts should address the prejudice prong first where it is dispositive of a petitioner's claims. *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002).

*Judge v. United States*, 119 F. Supp. 3d 270, 280-81 (D.N.J. 2015).

In the context of a guilty plea, counsel is required to provide a criminal defendant with sufficient information to "make a reasonably informed decision whether to accept a plea offer," which generally requires that counsel discuss with him the facts of his case, the likelihood of conviction at trial, and his comparative sentencing exposure. *United States v. Bui*, 795 F.3d 363,

7

366-67 (3d Cir. 2015) (quoting *Shotts v. Wetzel*, 724 F.3d 364, 376 (3d Cir. 2013)); *see also Lafler v. Cooper*, 566 U.S. 156, 163 (2012); *Hill v. Lockart*, 474 U.S. 52, 57-58 (1985). To show deficient performance, a petitioner must show that counsel's advice fell outside of "the range of competence demanded of attorneys in criminal cases," and therefore deprived him of the ability to evaluate the offered plea. *Lockhart*, 474 U.S. at 56-58. Even if a petitioner can show that plea counsel's advice related to these issues was deficient, he must still show prejudice by providing facts which indicate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . [which i]n the context of pleas [requires] a [petitioner] show the outcome of the plea process would have been different with competent advice." *Lafler*, 566 U.S. at 163. Where a petitioner accepted a guilty plea in the underlying case, this will require that the petitioner show that, but for counsl's error, there is a reasonable probability that he would not have pleaded guilty and would have insisted on going to trial. *Lee v. United States*, 582 U.S. 357, 364-65 (2017). Prejudice may not be premised solely on a petitioner's changed mind; to demonstrate prejudice, a petitioner must show that a decision to reject the offered plea would have been rational under the circumstnces. *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010). Where a particular case does not involve special consequences—such as certain deportation following a guilty plea—a petitioner seeking to show a decision to reject a plea would have been rational must show that choosing trial over the plea would have likely left him in a better position. *See Lee*, 582 U.S. at 365 ("when the defendant's decision about going to trial turns on his prospects of success [and the resulting sentence] and those are affected by" alleged attorney error it "is true" that "a defendant must show that he would have been better off going to trial").

Here, Petitioner asserts that counsel inadequately discussed with him the facts of his case and the elements of a § 924(c) violation. Petitioner argues that this led to him pleading guilty despite the fact that he now believes himself to be innocent, as he does not believe there was a

8

sufficient nexus between his drug trafficking activities and his possession of the weapon. Counsel, Petitioner asserts, convinced him that he was likely to be convicted if he went to trial, but had counsel advised him that the Government must prove a nexus between the weapon and his drug trafficking activity, Petitioner would not have pled guilty. Plea counsel disputes the details of their conversation, asserting that he clearly explained all of the elements of the charged offenses to Petitioner and addressed the facts of Petitioner's case, but does not dispute that he told Petitioner he was likely to be convicted at trial and suggested they pursue a plea deal in light of the potential for a harsh sentence.

As the Government points out in its answer, Petitioner is mistaken in his belief that counsel erred in suggesting that Petitioner was likely to be convicted at trial. That advice was completely accurate. As the Third Circuit has explained,

> Under § 924(c), the "mere presence" of a gun is not enough [to support a conviction]. "What is instead required is evidence more specific to the particular defendant showing that his or her possession actually furthered the drug trafficking offense." [*United States v.*] *Ceballos-Torres*, 218 F.3d [409,] 414 [(5th Cir. 2000)]; *see also* [*United States v.*] *Mackey*, 265 F.3d [458,] 462 [(6th Cir. 2001)] (stating "that the possession of a firearm on the same premises as a drug transaction would not, without a showing of connection between the two, sustain a § 924(c) conviction"). Put another way, the evidence must demonstrate that the possession of the firearm advanced or helped forward a drug trafficking crime [based on consideration of] the following nonexclusive factors . . .
>
>> the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found.

*United States v. Sparrow*, 371 F.3d 851, 853 (3d Cir. 2004) (quoting *Ceballos-Torres*, 218 F.3d at 414-15); *see also United States v. Albertorio-Garcia*, 685 F. App'x 109, 111-12 (3d Cir. 2017).

9

Based on these factors, the Third Circuit has found a sufficient nexus between a weapon and drug trafficking activity to support a conviction where the gun was found on the same premises where such activity occurred albeit in a different room from the one in which drugs were recovered, in close proximity to paraphernalia such as a scale with white residue, where the gun was found to be loaded and easily accessible, and was illegally possessed. *Albertorio-Garcia*, 685 F. App'x at 112. The facts of Petitioner's case largely mirror those in *Albertorio-Garcia*. Petitioner illegally possessed the firearm in question in this case, in the same residence he appeared to be using to weigh, package, and store illicit drugs, in an easily accessible bag in his bedroom in close proximity to drug paraphernalia and packaging materials. Those facts are more than sufficient under the caselaw of this circuit to support a conviction under § 924(c). Although a jury may not ultimately have convicted, a conviction was certainly likely, and counsel's conclusion to that effect was hardly as incorrect as Petitioner believes. In light of these unfavorable facts, counsel's advice to seek a plea deal rather than proceed to trial and risk the significantly harsher sentence Petitioner would have faced was an entirely reasonable suggestion and does not appear to have been deficient.

Putting the adequacy of the advice aside, however, it is clear that Petitioner cannot show prejudice in this case as Petitioner cannot show that a decision to proceed to trial on his § 924(c) charge would have been rational, and thus fails to show it is likely he would have done so with "better" advice from counsel. In his reply brief, Petitioner argues that, had he been "better" advised, he would have insisted on proceeding to trial *only* on the § 924(c) charge. Petitioner does not suggest he wished to proceed to trial on his drug trafficking or unlawful gun possession charges. Instead, Petitioner appears to believe that he should have turned down the plea agreement, pled guilty without the benefit of his plea agreement as to the two undisputed charges, and then proceeded to trial solely on the § 924(c) charges without a significant increase in his sentencing

10

exposure. Indeed, Petitioner believes that succeeding on the § 924(c) charge would have cut any sentence he received by a third.

That assertion is entirely mistaken. Had Petitioner pled guilty to just the first two charges without the benefit of a plea deal, he would have faced a recommended guideline range on those charges alone well in excess of the total sentence he received under the plea agreement, before one even considers the additional five years to life imprisonment to which he was subject on the § 924(c) charge if convicted at trial. As pleading guilty to the first two offenses alone would have almost certainly resulted in a harsher sentence than that stipulated to for all three charges under the plea agreement, and still would have carried a high likelihood of conviction and further prison time after trial on the § 924(c) charge, it would not have been rational to reject the plea agreement in favor of such a course. Indeed, by pleading guilty to the first two offenses, Petitioner would have essentially admitted the majority of the elements of a § 924(c) charge – that he was involved in drug trafficking, and that he possessed a firearm illegally; the only issue before the jury would have been whether the gun was possessed in furtherance of the drug trafficking, an inference a jury would almost certainly have made in light of the facts of Petitioner's case. As Petitioner has not shown that it would have been rational under the circumstances to pursue such a course, he cannot show that he was prejudiced by counsel's advice. *Padilla*, 559 U.S. at 372; *Lee*, 582 U.S. at 365.

Petitioner's ineffective assistance of counsel claim thus fails on both of *Strickland's* prongs, and is without merit.[2]

Finally, in his reply brief, Petitioner for the first time argues that counsel also proved inadequate in failing to challenge his § 924(c) conviction on speedy trial grounds. A § 2255 Petitioner, however, may not raise a new claim for the first time in a reply brief. *See, e.g., Judge*, 119 F. Supp. 3d at 284. Even putting aside the fact that a court is free to ignore claims and arguments raised only in reply which a petitioner could have raised earlier through an amended motion to vacate sentence, *id.*, Petitioner's Speedy Trial Act claim is meritless. Under the Act, trial in a criminal matter "shall commence within seventy days from the filing date . . . of the . . . indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. §3161(c)(1). Here, Petitioner pled guilty *prior* to being indicted, and thus before his Speedy Trial Act clock would have begun to run. Indeed, even putting the indictment issue aside, Petitioner first appeared before a magistrate judge for his initial appearance on May 2, 2019, and pled guilty – thus waiving his

---

[2] Petitioner suggests that his issue with his § 924(c) charge is at this time largely related to it excluding him from being able to earn additional credits towards his sentence under the First Step Act. Petitioner has presented no cases, and this Court is aware of no case, which supports the proposition that counsel was required to inform Petitioner of the statutory bar to such credits for convictions under § 924(c), especially in light of the highly speculative nature of Petitioner's likelihood to receive the credits at the time of Petitioner's sentence. At that time, the Bureau of Prisons (BOP) was still developing the system for the application of the credits, and counsel could hardly know whether Petitioner was likely to engage in the type of recidivism reduction programs required to even be eligible for the credits. *See, e.g,. Goodman v. Ortiz*, No. 20-7582, 2020 WL 5015613, at *1-4 (discussing the First Step Act and noting both that prisoners are required under the act to engage in recidivism reduction programs to earn credits, and that the BOP had until January 15, 2020 to put the system for the credits in place, with full implementation to be completed by January 15, 2022). Petitioner may well regret some aspects of his case at the current time. That regret, however, does not render rational a decision to reject a highly favorable plea deal in favor of a sentence virtually guaranteed to be more harsh before he even stands before a jury with a high likelihood of conviction on the disputed charge which would carry further significant penalties upon conviction.

right to trial – on July 8, 2019, after only 67 days had passed. (*See* Docket No. 19-470 Docket Sheet). Thus, even had the clock run from Petitioner's initial appearance as Petitioner believes, and even had none of the time prior to the guilty plea been excluded from the clock, the Speedy Trial claim Petitioner now wishes had been raised would have been utterly meritless, and counsel was not ineffective in failing to raise it. Thus, even if the Court were inclined to consider the claim, it provides no basis for relief, and Petitioner's motion to vacate sentence is denied.

      C.     **Petitioner's outstanding motions**

Prior to this matter being reassigned to this Court, Petitioner filed two motions in this matter. First, Petitioner requested discovery in the form of a copy of his plea and sentencing transcripts. (ECF No. 12.) Second, Petitioner objected to Judge Wolfson's order granting the Government permission to interview his plea counsel as he believes he had the right to be present at any questioning and to cross-examine counsel (ECF No. 13). As to the first issue, Petitioner sought the transcripts in order to prepare a reply brief. Petitioner, however, has already filed his reply and the Government provided a copy of the plea transcript with its answer. Petitioner has not shown why his sentencing transcript is relevant to this matter and the Court is aware of no connection between it and his claims based on the Court's review of the record. As Petitioner has not shown good cause for the provision of further discovery, and as he has already filed his reply, Petitioner's discovery motion is denied. *See United States v. Noyes*, 589 F. App'x 51, 53 (3d Cir. 2015) (discovery may be provided in a § 2255 proceeding only upon a showing of "good cause" which requires that the petitioner "provide reasons for the request").

Turning to the issue of the interview with counsel, Petitioner is mistaken to the extent that he believes the granting of permission to interview counsel is akin to an evidentiary hearing and that he should have been provided an opportunity to be present and cross examine counsel. Where a petitioner places counsel's representation at issue in a habeas proceeding, he waives his attorney

13

client-privilege as to his claims. *See Emmanouil v. Roggio*, 499 F. App'x 195, 201 (3d Cir. 2012); *U.S. Fire Ins. Co. v. Asbestospray, Inc.*, 182 F.3d 201, 212 (3d Cir. 1999); *Livingstone v. N. Belle Vernon Borough*, 91 F.3d 515, 537 (3d Cir. 1996); *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994); *Ragbir v. United States*, No. 17-1256, 2018 WL 1871460, at *2-3 (D.N.J. Apr. 19, 2018). Under such circumstances, the petitioner himself makes his former counsel a direct witness in the proceedings. Although such a witness is free to decline to speak with either the Government or the petitioner, the witness may also choose to speak with the Government at its request. *See, e.g., United States v. Bryant*, 655 F.3d 232, 239 (3d Cir. 2011); *Ragbir*, 2018 WL 1871460, at *5. While a party may request a formal deposition in a § 2255 matter, the Government is also free to request, and be granted, permission to interview former counsel in an informal manner without the presence of the petitioner. *Ragbir*, 2018 WL 1871460, at *5. The Court is aware of no caselaw requiring the petitioner's presence at such an interview and, as the interview in question is not presented as testimony, Petitioner's insistence that it is the equivalent of an *ex parte* hearing is mistaken. In any event, the interview in question had already occurred by the time Petitioner's request came before this Court, and Petitioner's request to be present is therefore moot at this time. Petitioner's motion objecting to Judge Wolfson's granting of permission to interview counsel is therefore denied as both meritless and moot.

     D.     **Certificate Of Appealability**

Pursuant to 28 U.S.C. § 2253(c), the petitioner in a § 2255 proceeding may not appeal from the final order in that proceeding unless he makes "a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Because Petitioner's ineffective assistance claim is without merit for the reasons discussed above, he has failed to make a substantial showing of a denial of a constitutional right. This Court therefore denies Petitioner a certificate of appealability.

## IV.   CONCLUSION

For the reasons set forth above, Petitioner's amended motion to vacate sentence (ECF No. 4) is **DENIED**; Petitioner is **DENIED** a certificate of appealability, and Petitioner's outstanding motions (ECF Nos. 12-13) are **DENIED**. An appropriate order follows.

*/s/ Michael A. Shipp*
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**